1
2
3
4
5
6
7
8                    IN THE UNITED STATES DISTRICT COURT

9                FOR THE NORTHERN DISTRICT OF CALIFORNIA

10
11                                          )
12   ARTHUR RAY JONES,                      )   No. C 13-1798 CRB (PR)
                                            )
13              Plaintiff(s),               )   ORDER GRANTING
                                            )   DEFENDANT'S MOTION FOR
14        vs.                               )   SUMMARY JUDGMENT
                                            )
15   J. SADEGHI, M.D.,                      )   (Docket #23, 29, 30 & 31)
                                            )
16              Defendant.                  )
     ─────────────────────────────────     )
17
18        Plaintiff Arthur Ray Jones, a prisoner at San Quentin State Prison (SQSP),

19   filed a pro se complaint for damages under 42 U.S.C. § 1983 alleging that he

20   received improper medical care for his left eye.  Plaintiff specifically alleges that

21   SQSP Dr. Jahangir Sadeghi operated on Plaintiff's left eye, which rendered

22   Plaintiff blind.  Plaintiff also claims that Dr. Sadeghi ignored Plaintiff's post-

23   surgery complaints.

24        Per order filed on August 12, 2013, the Court screened Plaintiff's

25   complaint pursuant to 28 U.S.C. § 1915A and found that Plaintiff's allegations,

26   when liberally construed, stated a cognizable Eighth Amendment claim under

27   § 1983 for deliberate indifference to serious medical needs against Defendant Dr.

28   Sadeghi and ordered him served.  August 12, 2013 Order (dkt. #6) at 2.

Defendant Dr. Sadeghi now moves for summary judgment under Federal Rule of Civil Procedure 56 on the ground that there are no material facts in dispute and that he is entitled to judgment as a matter of law. Mot. for Summ. J. (dkt. #23) at 1. Defendant specifically argues that, even when viewed in the light most favorable to Plaintiff, the evidence in the record does not demonstrate that he was deliberately indifferent to Plaintiff's serious medical needs in violation of the Eighth Amendment. Id. at 10-16. Plaintiff filed an opposition, and Defendant filed a reply. On May 2, 2014, the Court issued a Rand notice, and permitted Plaintiff to file a supplemental opposition if he so desired. Order (dkt. #27) at 2, citing Rand v. Rowland,154 F.3d 952, 962-63 (9th Cir. 1998) (en banc). Thereafter, Plaintiff filed a supplemental opposition and Defendant filed a supplemental reply.

Plaintiff also recently filed a motion for an independent examination by an optometrist, a motion for clarification, and a motion for discovery. Dkt. # 29, 30, & 31.

## UNDISPUTED FACTS

In February 2009, Plaintiff was housed at Solano State Prison. Compl. (dkt. #1) at 3A. Plaintiff's eyes became blurred and Plaintiff had cataract surgery on his right eye – the worse of the two eyes. Id.; Stamper Decl. ¶ 6a. As a result, the vision in Plaintiff's right eye became clear again. Compl. at 3A. Plaintiff was also provided with lenses for both of Plaintiff's eyes. Thereafter, Plaintiff was transferred to SQSP. Id. On July 29, 2010, Defendant saw Plaintiff and noted that Plaintiff's vision test for his left eye was 20/150. Stamper Decl. ¶ 6b. Defendant believed Plaintiff had cataract in his left eye. Id. On August 18, 2010, Defendant performed cataract surgery on Plaintiff's left eye. Compl. at 3A; Opp. (dkt. #25) at 1. Defendant used a premium intralocular lens on Plaintiff's left

eye.  Stamper Decl. ¶ 7b.  The same kind of lens had been used for Plaintiff's right eye.  Id.  No complications were identified during surgery.  Id.  Plaintiff was directed to keep an eye patch over his left eye for two days.  Compl. at 3A.  The following day, Plaintiff complained that he could not see out of his left eye.  Defendant noted that Plaintiff had some corneal swelling due to the surgery, but that the intraocular lens was in good position.  Stamper Decl. ¶¶ 6q, 7c.  Plaintiff was instructed to return for a follow-up in one week.  Sadeghi Decl. ¶ 5.

Plaintiff did not return for a post-operative visit with Defendant until December 1, 2011.  Id. at ¶ 5.  In the meantime, on September 16 and August 18, 2011, Plaintiff had routine medical check-ups where Plaintiff had no complaints regarding his bilateral cataracts and was otherwise stable.  Stamper Decl. ¶¶ 6h, 6i.

At Plaintiff's next appointment with ophthalmology on December 1, 2011, Plaintiff informed Defendant that he still could not see out of his left eye.  Compl. at 3A.  Defendant made Plaintiff glasses for his left eye, but the glasses did not help.[1]  Stamper Decl. ¶ 6g.  Plaintiff received the glasses on January 16, 2012.  Id. ¶ 6k.  Defendant told Plaintiff to return in six months.  Id. ¶ 6j.  At some point, Defendant made a second set of glasses, which were also unhelpful.  Compl. at 3A.

On March 1, 2012, Plaintiff told Defendant that his vision had changed.  Stamper Decl. ¶ 6l.  Defendant noted that Plaintiff's uncorrected vision in his left eye was 20/100.  Id.  Defendant also observed that the intraocular lens in Plaintiff's left eye was dislocated so Defendant submitted a request for services to SQSP and planned to exchange the intraocular lens for an anterior chamber

---

[1] Defendant asserts that he did not actually give Plaintiff glasses, but wrote a prescription instead.  Sadeghi Decl. ¶ 6.

3

intraocular lens.  Id.

On April 18, 2012, Defendant operated on Plaintiff's left eye again. Compl. at 3A-3B.  During surgery, Defendant discovered that the posterior capsule was broken, but because a significant amount of the anterior capsule and part of the posterior capsule remained, Defendant felt there was sufficient material left to continue using an intraocular lens rather than replacing it with an anterior chamber intraocular lens.  Stamper Decl. ¶ 6o.  However, the second surgery did not cure Plaintiff's blindness in his left eye, and Plaintiff began experiencing pain in that left eye.  Compl. at 3B.  Plaintiff informed Defendant, and Defendant responded that he would make Plaintiff another set of glasses.  Id. On April 26, 2012, and May 3, 2012, Defendant noted that the intraocular lens was in a good position and Plaintiff's vision test for his left eye was 20/80. Stamper Decl. ¶¶ 6r, 6s.

After a third set of glasses failed to help Plaintiff's eyesight in his left eye, Plaintiff asked Defendant to obtain the previous set of lenses that the previous ophthalmologist had gotten for him at Solano State Prison.  Compl. at 3B. Defendant refused.  Id.

On May 24, 2012, Defendant saw Plaintiff and noted that both intraocular lenses were in good positions.  Stamper Decl. ¶ 6v.  On July 27, 2012, Defendant saw Plaintiff and noted that his left eye vision test was 20/100-2.  Id. ¶ 6w. Defendant recommended distance glasses and instructed Plaintiff to return in three months.  Id.

Instead of returning in three months, as directed, Plaintiff saw Defendant again fifteen months later on October 31, 2013.  Id. ¶ 6z.  Plaintiff reported blurry vision and stated that the glasses were unhelpful.  Id.  Defendant noted that Plaintiff's intraocular lenses were in good positions, and that Plaintiff's corrected

4

vision was 20/25 in both eyes at Plaintiff's last visit, but was now showing 20/40-1.  Id.  Defendant recommended optical coherence tomography to make sure that Plaintiff did not have cystoid macular edema.  Id.  On February 12, 2014, Plaintiff underwent the procedure, and the test was negative, revealing a normal retina.  Id.

On April 19, 2012, Plaintiff filed the instant action alleging that Defendant was deliberately indifferent to his serious medical needs when he operated on Plaintiff's left eye, which rendered Plaintiff blind, and when he ignored Plaintiff's post-surgery complaints.

## DISCUSSION

### A.  Standard of Review

Summary judgment is proper when the pleadings, discovery, and affidavits demonstrate that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party.  Id.

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits which demonstrate the absence of a genuine dispute of material fact.  Celotex Corp. v. Cattrett, 477 U.S. 317, 323 (1986).  Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party.  Id.  But on an issue for which the nonmoving party will have the burden of proof at trial, as is the case here, the moving party need only point out "that there is an absence of evidence

to support the nonmoving party's case." Id.

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings to demonstrate the existence of a genuine dispute of material fact by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. R. Civ. P. 56(c). A triable dispute of fact exists only if there is sufficient evidence favoring the nonmoving party to allow a reasonable jury to return a verdict for that party. Anderson, 477 U.S. at 249. If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." Celotex, 477 U.S. at 323.

**B.     Analysis**

A prison official violates the Eighth Amendment's proscription against cruel and unusual punishment when he acts with deliberate indifference to the serious medical needs of a prisoner. Farmer v. Brennan, 511 U.S. 825, 828 (1994). To establish an Eighth Amendment violation, a plaintiff must satisfy both an objective standard – that the deprivation was serious enough to constitute cruel and unusual punishment – and a subjective standard – deliberate indifference. Snow v. McDaniel, 681 F.3d 978, 985 (9th Cir. 2012). To meet the objective standard, the denial of a plaintiff's serious medical need must result in the "'unnecessary and wanton infliction of pain.'" Id. (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)). To meet the subjective standard of deliberate indifference, a prison official must know that a prisoner faces a substantial risk of serious harm and disregard that risk by failing to take reasonable steps to abate it. Farmer, 511 U.S. at 837.

Negligence cannot establish liability under the Eighth Amendment. Id. at 835-36 n.4. An "official's failure to alleviate a significant risk that he should

6

have perceived but did not . . . cannot under our cases be condemned as the infliction of punishment." Id. at 838. Instead, "the official's conduct must have been 'wanton,' which turns not upon its effect on the prisoner, but rather, upon the constraints facing the official." Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998) (citing Wilson v. Seiter, 501 U.S. 294, 302-03 (1991)). Prison officials violate their constitutional obligation only by "intentionally denying or delaying access to medical care." Estelle, 429 U.S. at 104-05.

A showing of nothing more than a difference of medical opinion as to the need to pursue one course of treatment over another is generally insufficient to establish deliberate indifference. Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004). To prevail on a claim involving choices between alternative courses of treatment, a prisoner-plaintiff must show that the course of treatment the doctor-defendants chose was medically unacceptable under the circumstances and that they chose this course in conscious disregard of an excessive risk to plaintiff's health. Id.

Defendant claims he is entitled to summary judgment because, even when viewed in the light most favorable to Plaintiff, the evidence in the record does not show that he was deliberately indifferent to Plaintiff's medical needs. The Court agrees. In view of the undisputed evidence in the record, no reasonable jury could find that Defendant consciously disregarded Plaintiff's condition by failing to take reasonable steps to abate the risks. See Farmer, 511 U.S. at 837.

The record shows that after Plaintiff's surgery on August 18, 2010, Defendant noted that the intraocular lens was in a good position and there was some corneal swelling due to the surgery. Stamper Decl. ¶ 6g. Visual acuity in Plaintiff's left eye was 20/70 and intraocular pressure was normal. Id. Defendant instructed Plaintiff to use antibiotic drops for his eye, and Pred-Forte drops for the corneal swelling. Id. Defendant also directed Plaintiff to return for

7

a follow-up in one week.  Id.  Plaintiff failed to return until more than one year later on December 1, 2011.  Id. ¶ 6j.  Plaintiff asserts that when he did not return after one week, Defendant should have checked to see why Plaintiff did not return.  Opp. at 1.  Plaintiff believes that it was Defendant's duty to ensure that Plaintiff returned for a follow-up.  Id. at 2.  However, Plaintiff provides no evidence supporting his assertion.  Nor does Plaintiff provide evidence showing that he attempted to set up or request a follow-up appointment.  Even assuming that Defendant had some duty of care to follow-up with Plaintiff, there is no evidence suggesting that Defendant failed to do so while knowing that Plaintiff faced a substantial risk of serious harm and disregarding that risk by failing to take reasonable steps to abate it.  See Farmer, 511 U.S. at 837.  Plaintiff's assertion that Defendant's surgeries resulted in Plaintiff's being blind in his left eye is not supported by the record.  At most, even assuming that Defendant's surgeries caused Plaintiff's sight in his left eye to deteriorate, Plaintiff's claim is one of negligence rather than deliberate indifference.  There is no evidence that Defendant intentionally delayed or denied Plaintiff access to medical care.

Rather, the record makes clear that each time Defendant examined Plaintiff, Defendant considered Plaintiff's concerns, identified the problems and took reasonable steps to abate them by treating them.  Plaintiff argues that when he first saw Defendant, Plaintiff requested that Defendant retrieve the lens that was ordered for him by the ophthalmologist at Solano State Prison.  Supp. Opp. at 3.  Plaintiff alleges that Defendant refused to do so, and stated that he would make the lens himself.  Id.  However, the record shows that Defendant used the same premium intraocular lens in Plaintiff's right eye for Plaintiff's left eye.  Stamper Decl. ¶ 7b.  Plaintiff provides no evidence to support his implication that Defendant's failure to use the previously made lens was less than reasonable, much less that it was due to deliberate indifference.

8

They day after the first surgery, Defendant saw Plaintiff and observed that the left eye lens was in a good position and the vision test showed 20/70. Stamper Decl. ¶ 6g.  When Plaintiff returned to Defendant on December 1, 2011, Plaintiff's vision test in his left eye showed 20/100 and Plaintiff complained of blurred vision.  Id. ¶ 6j.  Defendant prescribed gasses with corrective lenses and instructed Plaintiff to return in six months.  Id.  Plaintiff returned to Defendant on March 1, 2012, and Defendant noted that Plaintiff's left eye vision remained at 20/100 but that the lens had shifted.  Id. ¶ 6l.  As a result, Defendant requested that Plaintiff receive a second surgery to re-position or replace the lens.  Id. Defendant performed the second surgery on April 18, 2012.  Id. ¶ 6o.  The following day, Defendant noted that the lens was in good position.  Id. ¶ 6q.  One week later, Defendant saw Plaintiff and Plaintiff's left eye vision test was 20/80 and the lens was in a good position.  Id. ¶ 6r.  Plaintiff was given eye glasses and asked to return in one week.  Id.

On May 3, 2012, Plaintiff returned, and his vision test remained at 20/80 and Defendant noted the lens position was good.  Id. ¶ 6s.  Defendant prescribed distance glasses.  Id.  Defendant saw Plaintiff again on May 24, 2012, and July 27, 2012, at which time Defendant observed that the lens was in a good position, and checked Plaintiff's vision.  Id. ¶¶ 6v, 6w.  Although instructed to return in three months, Plaintiff did not return until October 31, 2013, when Plaintiff again complained that his vision was blurry and the glasses were not helping.  Id. ¶ 6z. As a result, Defendant confirmed that the intraocular lenses were in a good position in both eyes, and because Defendant believed that Plaintiff's eyes were blurred due to the vision test, Defendant recommended further testing by optical coherence tomography.  Id.  The test results were negative and revealed a normal retina.  Id.

The undisputed facts do not demonstrate that Defendant was deliberately

9

indifferent to Plaintiff's post-surgery complaints.  That Plaintiff believes Defendant should have done more or done something different appears to be a disagreement with Defendant's chosen course of treatment – to perform cataract surgery, readjust Plaintiff's lens after the first cataract surgery, check Plaintiff's vision and adjust prescriptions for corrective eye glasses.  A mere disagreement is not enough to establish deliberate indifference.  See Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981).

Plaintiff has set forth no evidence whatsoever showing that the course of treatment Defendant chose was medically unacceptable under the circumstances and that Defendant chose this course of treatment in conscious disregard of an excessive risk to Plaintiff's health.  See Toguchi, 391 F.3d at 1058.

In fact, Dr. Robert Stamper, a board-certified ophthamologist reviewed all the pertinent medical records and determined that Defendant's actions met the standard of care ordinarily exercised by prudent ophthalmologists.  Stamper Decl. ¶ 7a.  Dr. Stamper stated that Defendant's operative technique for the first surgery was appropriate.  Id. ¶ 7b.  Dr. Stamper explained that a small break in the posterior capsule during the first surgery are a known complication of cataract surgery and does not suggest poor technique or negligence.  Id.  Further, Dr. Stamper reviewed Defendant's actions post-surgery and opined that the treatment Defendant provided was proper and within the normal standard of care.  Id. ¶¶ 7c-7h.  Plaintiff has not disputed this evidence with any of his own.

In sum, Plaintiff has not demonstrated the existence of a genuine dispute of material fact on his claim that Defendant was deliberately indifferent to his serious medical needs.  Defendant consequently is entitled to summary judgment as a matter of law.  See Celotex, 477 U.S. at 323.

**C.    Miscellaneous motions**

Plaintiff moves for an independent examination by an optometrist.

However, Plaintiff's medical condition is not in dispute.  See Fed. R. Civ. P. 35; Schlagenhauf v. Holder, 379 U.S. 104, 118-19 (1964).  The motion is DENIED.

Plaintiff's motion for clarification of order is not understandable.  Plaintiff does not state what he needs clarified.  The motion is DENIED.

Plaintiff has also filed motion for discovery, in which he requests records of all medical malpractice suits or complaints filed against Defendant.  Federal Rule of Civil Procedure 56(d) provides that if a party opposing summary judgment demonstrates a need for further discovery in order to obtain facts essential to justify the party's opposition, the trial court may deny the motion for summary judgment or continue the hearing to allow for such discovery.  See Fed. R. Civ. P. 56(d); Margolis v. Ryan, 140 F.3d 850, 853 (9th Cir. 1998).  In making a Rule 56(d) motion, a party opposing summary judgment must make clear "what information is sought and how it would preclude summary judgment."  Id. at 853. Because Plaintiff has not done so, his motion is DENIED.

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment (dkt. #23) is GRANTED and Plaintiff's pending motions (dkt. #29, 30, 31) are DENIED.

The clerk shall enter judgment in accordance with this order and close the file.

SO ORDERED.

DATED:   June 6, 2014

_____
CHARLES R. BREYER
United States District Judge

G:\PRO-SE\CRB\CR.13\Jones, A.13-1798.msj.wpd

11